UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RITA KRUK,<br><br>      Plaintiff,<br>v.<br><br>METROPOLITAN LIFE INSURANCE CO., INC., and PECHINEY PLASTIC PACKAGING, INC.,<br><br>      Defendants. | 3:07-CV-01533 (CSH)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

<u>HAIGHT, Senior District Judge:</u>

**I.     Background**

This case concerns a denial of long-term disability ("LTD") benefits under a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The case comes before the Court on Plaintiff Rita Kruk's motion to compel compliance with certain discovery requests.

      **A.     Procedural Background**

MetLife denied the benefits at issue in this case in 2001, and Kruk filed her first lawsuit based on that denial in 2002. In late 2004, that case was tried to this Court (Covello, J.). *See* Memorandum of Decision [doc. #144], *Kruk v. Pechiney Plastics Packaging, Inc.*, No. 3:02-cv-00121 (AVC) (D. Conn. Dec. 27, 2004) [hereinafter *Kruk I*], *reprinted in* Pl.'s Ex. A [doc. #23-2] at 2; Judgment [doc. #145], *Kruk I*, (Dec. 28, 2004), *reprinted in* Pl.'s Ex. A [doc. #23-2] at 12.

In that opinion, the Court found that "Pechiney is the plan administrator, funds the plan and retains final authority and responsibility for the plan and its operation. Metlife is the claims administrator for the plan and, in this capacity, has the discretion to resolve benefit eligibility issues." *Kruk I* at 2; *see also id.* at 2 n.1 ("Pursuant to an Administrative Services Agreement,

Pechiney delegated its discretionary authority to MetLife to provide 'full and fair review of determinations concerning eligibility for Plan Benefits and the interpretation of the Plan terms in connection with the appeal of claims denied in whole or in part, required under ERISA Section 503.'").

This Court's conclusion in *Kruk I* was that MetLife should have obtained additional information before making its eligibility determination:

> In this case, MetLife had discretionary authority in determining whether Kruk was eligible for benefits and, accordingly, the court reviews the decision denying her benefits under the arbitrary and capricious standard. Having reviewed the record, the court concludes that the claim denial was arbitrary and capricious because Metlife, after concluding that additional medical evidence was required to fully consider the claim, denied the claim without ever submitting an information request to Dr. Tec and without making the appropriate inquiry as to the status of the information request submitted to Dr. Witt.

*Kruk I* at 8. The matter was remanded to MetLife so that it could gather such information and review the determination again, in light of that information.

### B.  Plaintiff's Claims in This Case

"On remand, MetLife partially approved plaintiff's claim based on a finding that she has a psychological disability but upheld its earlier determination that plaintiff failed to establish the existence of a physical disability." Def. MetLife's Mem. in Opp'n [doc. # 30] at 3. Kruk challenges this new determination, claiming that the decision to deny her claim for certain long-term disability benefits was arbitrary and capricious under ERISA. Compl. ¶ 40.

Kruk also suggests that the determination of benefits in her particular case was tainted by procedural irregularity, and also a possible conflict of interest. Procedurally, Kruk claims an irregularity because her claim was placed "under high review status because the monthly benefit

exceeded $5,000," Compl. ¶ 17; *see also Kruk I* at 4, which MetLife admits. MetLife's Answer ¶ 17. Kruk wishes to use discovery to learn "why the Plaintiff's claim was treated in the manner it was by Pechiney and subjected to 'special handling requirements.'" Pl.'s Mem. at 4. Kruk also wants to consult MetLife's claims handling manual "or similar document," but "MetLife has responded that it did not consult any claims handling manuals. . . . [T]his information is further relevant on whether MetLife followed its own procedures, the applicable standard of review and the issue of prejudice." *Id.*

Kruk also alleges that her former employer "Pechiney is both a plan 'sponsor' of the Disability Plan . . . an 'administrator' of the Disability plan . . . and a fiduciary with respect to the Disability plan . . . ." Compl. ¶ 11. This allegation suggests that Kruk's claim might have been denied due to a conflict of interest, and that suggestion can also be perceived in this Court's findings in *Kruk I*. Indeed, MetLife openly acknowledges that "Pechiney self funds every dollar of LTD benefits paid under the plan. Pechiney also retains final decision-making authority with respect to MetLife's benefit determinations." Def. MetLife's Mem. [doc. #30] at 3; *see also id.* at n.3.

Kruk now seeks an order compelling the defendants to provide three very different kinds of discovery. First, Kruk seeks a copy of the "claims handling guidelines used by the Defendants." Pl.'s Mem. [doc. #23] at 1. Second, she seeks to compel the depositions of "claims and medical personnel who denied [her] claims." *Id.* Third, she seeks an opportunity to "investigate the relationship between the defendant insurance company and its reviewing doctors." *Id.*

According to Kruk,

> All of this information should have been part of the administrative record but was improperly excluded by the Defendants. Further, this information is relevant on the issues of whether the Defendants complied with ERISA's regulatory requirements, the issue of prejudice and what the appropriate standard of review is at the time of trial.

*Id.* at 2.

MetLife responds that "plaintiff's true purpose is to attempt to obtain discovery of information outside of the Administrative Record for the purpose of challenging the merit of the MetLife's underlying claim determination in direct conflict to the limited scope of review allowed under ERISA." Def.'s Mem. at 5. Furthermore, MetLife asserts that "whether MetLife was operating under a conflict of interest when administering her claim" is not "relevant to the standard of review" employed by this Court "as a matter of law." *Id.*

**II.    Discussion and Analysis**

   **A.    Standard of Review**

For the purposes of deciding this discovery motion, I will treat the Court's opinion in *Kruk I* as the law of the case. In other words, absent "good cause" to do otherwise, I will assume for the purposes of argument that the operative policies will eventually require this Court to review the merits of Kruk's denial of benefits under the deferential "arbitrary and capricious" standard,[1] and the trial court's factual review will be constrained to the administrative record that was before MetLife when it made the determination.[2]

---

1. The term "arbitrary and capricious" is used interchangeably with the phrase "abuse of discretion," and either describes the deferential standard applied when an ERISA plan reserves discretion for the administrator. *See* Jayne E. Zanglein & Susan J. Stabile, *ERISA Litigation* 592 n.2 (3d ed. 2008); *Denmark v. Liberty Life Assur. Co. of Boston* , — F.3d —, 2009 WL 1219438, *5 (1st Cir. May 6, 2009).

2. The Second Circuit's recent opinion in *McCauley v. First Unum Life Insurance Co.* sets forth the meaning and application of this standard:

B.	The Discoverability of Evidence Outside the Administrative Record

As an initial matter, MetLife may be correct in arguing that even if it is found to have been operating under a conflict of interest, that will not affect the deferential standard of review in this case.[3] However, it does not follow that all evidence outside the administrative record is *necessarily* not discoverable.

In ERISA cases where a plan conveys discretionary authority upon an adminsitrator or fiduciary — and which are thus reviewed under the "arbitrary and capricious" standard — the Second Circuit has "repeatedly said that a district court's decision to admit evidence outside the administrative record is discretionary, 'but which discretion ought not to be exercised in the absence of good cause.'" *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) (quoting *Juliano v. Health Maint. Org'n of N.J., Inc.*, 221 F.3d 279, 289 (2d Cir. 2000) (internal quotation marks and citation omitted)).

It goes without saying that if certain evidence outside the administrative record would be admissible, then that evidence, at least, was relevant and therefore discoverable. Rule 26(b)(1)

---

Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning without reason, unsupported by substantial evidence or erroneous as a matter of law. Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control. Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious.

551 F.3d 126, 132-33 (2d Cir. 2008) (internal quotation marks and citations omitted).

3.    This would appear to be the necessary implication of the Supreme Court's recent decision in *Metropolitan Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008), discussed *infra* in Section II.B.1.

states that "[u]nless otherwise limited by court order . . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).

In other words, if I would have discretion to admit materials outside the administrative record in the presence of "good cause," then I must certainly have the discretion to permit discovery of such materials upon a showing of "good cause." *Cf. Wagner v. First Unum Life Ins. Co.*, 100 Fed. Appx. 862, 864 n.1, 2004 WL 1303637, *1 n.1 (2d Cir. 2004) ("Notwithstanding defendant's contention that such discovery is precluded by our general statement that 'under the arbitrary and capricious standard [a district court] is limited to the administrative record,' discovery may be appropriate in some cases where a petitioner seeks to show a conflict of interest. But because Wagner has not shown 'good cause' in support of her request, we affirm the court's decision below denying discovery." (citations and parenthetical quotations omitted)).[4]

---

4. It appears that *Wagner* is the only Second Circuit case that deals directly with the question of whether *discovery* should be permitted outside the administrative record, and even that is done in a footnote which is not essential to the holding of the case.

### 1.      Conflict of Interest as Predicate Good Cause For Discovery Outside the Administrative Record

In its recent opinion of *McCauley v. First Unum Life Insurance Co.*, the Second Circuit updated its jurisprudence regarding the effect of a conflict of interest upon the deferential standard of review in ERISA benefits cases.[5] In the wake of the Supreme Court's recent decision in *Metropolitan Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008), a conflict of interest does not change the court's deferential review for abuse of discretion. Instead, the conflict of interest "is to be '*weighed as a factor* in determining whether there was an abuse of discretion.'" *McCauley*, 551 F.3d 126, 128 (2d Cir. 2008) (quoting *Glenn,* 128 S.Ct. at 2348) (internal brackets omitted; emphasis in *Glenn*).

Assuming that this Court applies the deferential standard of review in the merits phase of this case, then in order for the Court to consider evidence beyond the administrative record, Kruk will have to *demonstrate* a conflict of interest. *Krizek v. Cigna Group Ins.*, 345 F.3d 91, 97 & n.2 (2d Cir. 2003). District courts within this circuit, and the courts of appeal in other circuits, have therefore concluded that one appropriate avenue for *discovery* is to identify a conflict of interest.[6]

---

5. Previously, if a conflict of interest actually influenced an ERISA plan administrator's decision, then that decision would no longer be entitled to deference, and would instead be reviewed *de novo*. 551 F.3d 126, 128 (2d Cir. 2008).

6. *See, e.g.*, *Samedy v. First UNUM Life Ins. Co. of Am.*, No. 05-cv-1431(CBA)(KAM), 2006 WL 624889, *2 (E.D.N.Y. Mar. 10, 2006) ("Under limited circumstances, a plaintiff is permitted to look outside the four corners of the administrative record for this information regarding a conflict of interest because "direct evidence of a conflict is rarely likely to appear in any plan administrator's decision." While the Court is mindful of the goals of allowing only limited discovery in ERISA cases, namely speedy and inexpensive adjudication, these goals are not frustrated by allowing the deposition of one of defendant's employees for the narrow purpose of determining whether defendant's consideration of plaintiff's application presented a conflict of interest, and whether that conflict influenced defendant's decision to deny plaintiff's long-term disability benefits." (internal citations omitted)); *Sheehan v. Metropolitan Life Ins. Co.*, No. 01-Civ-9182 (CSH), 2002 WL 1424592, * 4 (S.D.N.Y. June 28, 2002) (noting that a plaintiff must demonstrate a conflict of interest or other good cause to present evidence outside the administrative record and therefore concluding that a proper subject for discovery was whether

2.  **Identification of Procedural Irregularities as Predicate Good Cause For Discovery Outside the Administrative Record**

Some courts of appeal in other circuits have permitted limited discovery outside the administrative record to determine whether an administrator or fiduciary followed its own procedures in determining benefits.[7] Others have assumed the availability of such discovery in principle but put limits on its application. For example, in *Huffaker v. Metropolitan Life Ins. Co.*, the Sixth Circuit noted:

> Evidence outside the administrative record may be considered "if that evidence is offered in support of a procedural challenge to the administrator's decision, *such as an alleged lack of due process afforded by the administrator or alleged bias on its part*. . . . [A]ny prehearing discovery at the district court level should be limited to such procedural challenges.

271 Fed. Appx. 493, 503-04, 2008 WL 822262 (6th Cir. Mar. 25, 2008) (unpublished decision) (emphasis added; quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)). Nevertheless, the Sixth Circuit held that a "mere allegation of bias is insufficient to

---

the plan administrator was conflicted when it terminated the plaintiff's benefits); *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 395 (3d Cir. 2000) ("[T]he District Court may take evidence regarding [a] conflict of interest, and ways in which the conflict may have influenced the [benefits] decision, and then determine whether, considering the conflict, the decision was 'arbitrary and capricious' . . . ."), *abrogated on other grounds*, *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 431 (6th Cir. 2006) ("If discovery into the alleged procedural defects supports a plaintiff's allegations of due process denial, then a district court is obligated to permit discovery into more substantive areas of a plaintiff's claim. . . . [U]ntil a due process violation is at least colorably established additional discovery beyond the administrative record into a plaintiff's denial of benefits claim is impermissible.").

7.  *See, e.g.*, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir. 2006) ("Even when . . . abuse of discretion review applies, the court may take additional evidence when the [procedural] irregularities have prevented full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct."); *Maynard v. CNA Life Assur. Co.*, 2008 WL 755335 (9th Cir. Mar. 20, 2008) (unpublished opinion) ("The district court should permit that discovery and should then resolve anew the issue of which policy controls . . . .").

'throw open the doors of discovery' in an ERISA case." 271 Fed. Appx. at 504 (quoting *Likas v. Life Ins. Co. of N. Am.*, 222 Fed. Appx. 481, 486 (6th Cir. 2007) (citations and quotation marks omitted)). Pointing to a similar case in its precedent, where a claimant insufficiently alleged "that the administrator refused to permit him to submit information during his administrative appeal," *id.*, the plaintiff in *Huffaker* had not alleged sufficient procedural error: "The only evidence offered in support of the allegation of procedural error is that MetLife has a 'habit' of repeatedly using the same consultants." *Id.* (internal quotation marks and citation omitted).

### 3. Kruk's Theories of Conflict and Procedural Irregularity

Kruk relies on two theories, at bottom, to support her motion to compel discovery.

The first theory, already discussed, is that review of Kruk's claim was tainted by the conflict of interest inherent in MetLife's review procedures, combined with Pechiney's funding of the plan and "final authority and responsibility for the plan and its operation." *Kruk I* at 3.

The second theory, which is more unusual, alleges a kind of procedural irregularity — although not the kind that is seen in other cases. Kruk claims that "the Defendants sought to gerrymander the administrative record to exclude information specifically requested by the Plaintiff. The information was requested during the administrative phase and should have been provided then." Pl.'s Mem. [doc. #23] at 10. MetLife does not appear to dispute the factual allegation that Kruk did indeed request these items.

In this respect, Kruk's claim is similar to one considered by the First Circuit in *Glista v. UNUM Life Insurance Co. of America*, 378 F.3d 113 (1st Cir. 2004). In *Glista*, the plaintiff appealed the district court's refusal to include some of the administrator's internal policies as part of the administrative record. The First Circuit reversed the district court, noting that the documents which the plaintiff sought to include were "analogous to an administrative agency's

guidelines or regulations, which are routinely considered in evaluating whether the agency's actions were arbitrary or capricious. The documents here shed light on the 'legal' rule the Plan applies, not the underlying facts presented to the Administrator." *Id.* at 122-23. The First Circuit also dismissed concerns about overburdensome discovery, noting that the issue concerned "discrete documents easily made available." *Id.* at 123.

The plaintiff in *Glista* — like Kruk — also pointed to the Department of Labor's regulations concerning the "full and fair review" to which claimants are entitled under ERISA regulations. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560-503-1(h)(2)(iii).

> Moreover, under new federal regulations, claimants are entitled to obtain copies of precisely such documents. . . . In 2000, the Department of Labor promulgated regulations interpreting "full and fair review" to require that claimants be given access to all "relevant" documents. 29 C.F.R. § 2560.503-1(h)(2)(iii). Where the plan in question provides disability benefits, the Department of Labor defines "relevant" documents to include "statement[s] of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, *without regard to whether such advice or statement was relied upon in making the benefit determination*." § 2560.503-1(m)(8)(iv). The Department indicated that these new regulations were intended to make clear that "the claimant should receive any information demonstrating that, in making the adverse benefit determination, the plan complied with its own processes for ensuring appropriate decisionmaking and consistency." 65 Fed.Reg. 70,246, 70,252 (Nov. 21, 2000).

*Id.* at 123 (emphasis added).

Those are precisely the provisions cited by Kruk in her argument that MetLife has 'gerrymandered' the administrative record in this case. The only difference is that in *Glista*, the First Circuit had no need to order discovery, because the documents had already been produced in discovery, and the plaintiff was only asking that they be considered as part of the administrative record.

But Kruk's request follows naturally from the First Circuit's holding in *Glista*; if the documents are properly included within the scope of this Court's review for abuse of discretion — that is, arbitrariness and capriciousness — then they are also properly within the scope of discovery.

### C.     Kruk's Discovery Requests

Given the legal framework described above, I now address each of the disputed discovery requests in turn.

#### 1.     Claims Manual

MetLife has cited several district court cases from other judicial circuits to show that "[t]he legal proposition that claim manuals must always be produced as part of the Administrative Record has been squarely rejected." MetLife's Memo in Opp'n at 13-14. I am not convinced by these cases.

The plain language of the statute on the issue of relevancy is inescapable: "A document, record, or other information shall be considered 'relevant' to a claimant's claim if such document, record, or other information . . . (iv) [i]n the case of a . . . plan providing disability benefits, constitutes a statement of . . . *guidance* with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, *without regard to whether such advice or statement was relied upon in making the benefit determination*." 29 C.F.R. § 2560.503-1(m)(8) (emphases added). MetLife quoted this very language in its brief.

In this respect, I agree with the opinion in *Cannon v. UNUM Life Insurance Co. of America*, 219 F.R.D. 211 (D. Me. 2004). In that case, the magistrate judge held that "[o]bviously, if [the administrator] has internal memoranda or policies that instruct claim handlers how to apply the [policy] limitation[s], such materials are relevant to the question of

whether [the administrator] acted arbitrarily and capriciously in connection with its denial of [plaintiff's] claim." 219 F.R.D. at 214. MetLife argues that "[t]he legal proposition that claim manuals must always be produced as part of the Administrative Record has been squarely rejected," and cites three cases outside this circuit for that proposition. Def. MetLife's Mem. [doc. #30] at 13-14. I cannot reconcile the holdings in these cases with the plain language of the regulation, which requires production of any document, record, or other information if it constitutes a statement of guidance concerning the benefit at issue, *regardless* of "whether such advice or statement was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8)(iv). And none of MetLife's cases even mentions that provision, let alone provides a reasoned basis for rejecting its application.

Furthermore, the discovery requests regarding disability claims manuals or policies should be answered by both defendants. Even though defendant Pechiney was not responsible for the administration of the claim, it is undisputed that Pechiney retained "final authority and responsibility for the plan," whatever that means. *Kruk I* at 2. Whatever the extent of Pechiney's involvement with Kruk's claim, if such involvement was addressed by any statement of "guidance," then such guidance should be identified and such documents should be produced.

I note, however, the crucial words of limitation that constrain the scope of production requied by the regulation. In responding to Kruk's requests for claims manuals and handling materials, Pechiney and MetLife are *not* obligated to produce "*[a]ll* internal operating procedures, guidelines and documents concerning the manner in which the Company undertakes review of appeals of claims for long term disability insurance," which is what plaintiff requested. Pl.'s Mem. ex. G [doc. #23-8] at 4 (emphasis added). Instead, they must produce any "statement

of policy or guidance *with respect to the plan* [and] *concerning the denied treatment option or benefit for the claimant's diagnosis*, without regard to whether such advice or statement was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8)(iv) (emphases added).

### 2.    Interrogatory #12, as to both defendants

This interrogatory seeks the identity of "every medical and/or health care professional that MetLife had review the Plaintiff's LTD Application," as well as a statement regarding "why MetLife determined that review by this [person] was appropriate," the person's employment status and qualifications, and information regarding how often that person "rendered an opinion on an application for long term disability benefits for MetLife." Pl.'s Mem. ex. C at 7; *see also id.* ex. D at 6 (making appropriate substitutions of Pechiney for MetLife).

Because the responses to these interrogatories could be directly relevant to questions of conflicts of interest and the following of established procedures, I find these requests to be wholly proper. Defendants must respond to them.

### 3.    Depositions of Medical and Claims Personnel, as to both defendants

During her administrative appeal of MetLife's denial of her claim, Kruk requested "the opportunity to examine, under oath, all doctors or healthcare professionals employed or otherwise retained by the Company to review Ms. Kruk['s] file." Pl.'s Mem. ex. G [doc. #23-8] at 4. She has noticed the depositions of three such individuals — Dennis Payne, Jr., M.D.; Reginald A. Givens, M.D.;[8] and Sharon Muldrow — as well as a deposition of the Pechiney

---

8.    Drs. Payne and Givens are identified in Kruk's complaint as secondary reviewers of her claim:

> 46.    The district court vacated MetLife's denial, and remanded the matter for a new eligibility determination: "with consideration to be given to information that should have been made part of the

employee most knowledgeable regarding the denial of her claim. Def. MetLife's Mem. ex. 3 at 4-11 [doc. #30-2 at 22-29].

MetLife's entire objection is grounded on the argument that "[t]he regulations cited by the plaintiff do not grant ERISA claimants the right to conduct deposition discovery. In fact, the opposite is true." Def. MetLife's Mem. at 9 (citation omitted). Furthermore, MetLife argues that Kruk "has failed to establish that good cause exists to allow her to conduct deposition discovery in this case." *Id.* at 11. Pechiney's only objection is that the arbitrary and capricious standard of review precludes discovery outside the administrative record. Def. Pechiney's Mem. [doc. #31] at 1-2.

While I agree with MetLife's reading of the relevant regulation, Kruk is still clearly entitled to seek discovery by deposition if she can demonstrate a good reason why evidence thus obtained might later provide "good cause" for this Court to look beyond the administrative record in this case. I also agree with the Sixth Circuit that a "mere allegation of bias is insufficient to throw open the doors of discovery in an ERISA case." 271 Fed. Appx. at 504 (internal quotation marks and citation omitted).

My concern, therefore, boils down to whether Kruk's motion actually raises a colorable allegation that her determination was tainted by a conflict of interest or other procedural

---

administrative record, that is, Dr. Witt and Dr. Tec's responses to Ms. Iannones' information request." (Id.)

47.  MetLife reviewed Kruk's claim after receiving documents from Dr. Tec and Dr. Witt, and sent Kruk's claim file to Independent Physician Consultants Dennis Payne, Jr., M.D. And Reginald A. Givens, M.D.

48.  On January 20, 2006, MetLife again denied Kruk long term disability benefits.

Compl. at 9.

irregularity.  And while her briefs focus primarily on other arguments, she also alleges that her claim was subjected to "special handling requirements," Pl.'s Mem. at 4, and that defendant Pechiney both funds the plan and "retains final authority and responsibility for the plan and its operation."

Strung together, these allegations suggest that Kruk might be able to uncover, during a deposition, information regarding whether her claim determination was colored by a financial conflict of interest, or information regarding whether the usual procedures used by MetLife and Pechiney to determine claims were somehow avoided.  However, Kruk has not suggested that these individuals would testify to such conflicts.  Instead, she suggests that these individuals should be deposed to investigate whether they have *personal* conflicts of interest that might call their evaluations into question:

> For example, if the doctors do nothing but review MetLife claims, that is relevant on the issue of bias.  If MetLife hires a separate company which only reviews disability claims for insurance companies that, too, is relevant on the issue of bias.  Even if MetLife is entitled to a deferential standard of review . . . [if] there is a substantial financial incentive for them to deny claims, the Court should know this and be entitled to evaluate the importance of such information.

Pl.'s Reply Mem. [doc. #32] at 4.  In her main brief, Kruk cites several cases for this proposition, which MetLife distinguishes in a lengthy footnote.  *See* Def. MetLife's Mem. at 16-17 n.10.  But in sum, MetLife objects because "Plaintiff has failed to meet her burden of showing that good cause exists to allow her to take any discovery outside of the Administrative Record."  *Id.*  As I have already said, Kruk has not established "good cause" yet, but the entire purpose of granting this discovery is to allow her to investigate whether such a showing could be made at trial.

Therefore, I conclude that Kruk should be permitted to depose Pechiney's representative, but she must limit her inquiry to whether or not her determination was affected by a conflict of interest, and whether or not her determination departed from the standard procedures for decisions on LTD benefits.

Kruk may also conduct the remaining depositions of medical or health care personnel, but these must be limited to the issue of whether this case constituted a departure from the standard procedures for determining LTD benefits, and the issue of whether the personnel have a relationship with MetLife or Pechiney that would call their medical evaluations into question. These depositions may not venture into the actual, medical merits underlying those determinations.[9]

### 4. Pechiney Interrogatory #1

Kruk states that she "seeks the identity of who at Pechiney has knowledge" of her disability claim, so that she "may notice the deposition of those individuals with knowledge of why the Plaintiff's claim was treated in the manner it was by Pechiney and subjected to 'special handling requirements.'" Pl.'s Mem. [doc. #23] at 4. However, the actual text of her interrogatory instructed Pechiney to "[i]dentify all persons who assisted with preparation of responses to these interrogatories and production requests, other than outside counsel." *Id.* at Ex. D [doc. #23-5] at 2.

---

9. I reject Kruk's arguments that she should be entitled to examine these individuals on the merits of their medical determinations. *See* Pl.'s Mem. [doc. #23] at 8 ("Without the ability to depose the medical and claims personnel, there is no ability to ascertain how they reached their conclusions and test the bases thereof through cross-examination."). The merits of those determinations would be an issue before this Court if it were undertaking a *de novo* review, but given the current posture of the case, I cannot imagine a scenario in which the Court would undertake such a review.

As I have already said, the Court agrees that "the identity of who at Pechiney has knowledge" of her disability claim would be relevant and therefore discoverable, although one can hardly fault Pechiney for failing to answer that which was not asked. Pechiney has also represented to this Court that "any and all employees that were involved in processing Plaintiff's claims were identified in the Administrative Record." Pechiney's Mem. in Opp'n [doc. #31] at 1-2. On the basis of that representation, I see no need for a further response to this interrogatory.

    **D.**    **The Timeliness of the Plaintiff's Motion To Compel**

Lastly, the Defendants object to Plaintiff's Motion To Compel on the grounds that it is untimely. Opp. Mem. at 17. This issue is no longer before me as it was addressed by the Plaintiff's Motion for an Extension of Time, *nunc pro tunc*, to complete discovery and file its motion to compel. [Doc. #33]. Judge Dorsey granted that motion as his final act in this case prior to transferring the matter to my docket. [Doc. #34].

**III.**    **Conclusion**

Plaintiff's motion is hereby GRANTED in part and DENIED in part, as outlined above. Defendants shall respond or make the relevant individuals available for deposition[10] within thirty (30) days of this Order. Dispositive motions must be filed within forty-five (45) days thereafter.

It is SO ORDERED.

Dated: New Haven, Connecticut
         May 26, 2009

                                            /s/ *Charles S. Haight, Jr.*
                                          Charles S. Haight, Jr.
                                          Senior United States District Judge

---

10.    Individuals must be made available for depositions to the extent such individuals are under the defendants' control.